FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

97 FEB 25 PM 3: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

*cho*

DAVID MICHAEL WHETSTONE,          )
                                  )
        Plaintiff,                )
                                  )       CIVIL ACTION NO.
    vs.                           )
                                  )       CV 95-AR-3334-E
CHILDERSBURG HOUSING              )
AUTHORITY, et al.,                )
                                  )
        Defendants.               )

**ENTERED**

FEB 25 1997

### MEMORANDUM OPINION

The court has before it the motion for summary judgment

filed by defendants, Childersburg Housing Authority

("Authority"), Mary Williford ("Williford"), and Robert Cleckler,

Ivan Smith, Albert Porter, and Clark Hook (collectively "the

Board"), in the above-styled action.  Plaintiff, David Whetstone

("Whetstone"), alleges that defendants violated 42 U.S.C. § 1983

by retaliating against him for exercising his right to freedom of

speech and association.  Because genuine issues of material fact

exist with regard to some of Whetstone's claims, defendants'

motion will be granted in part and denied in part.

### I. Relevant Facts

Whetstone, a thirty-year-old white male was hired by the

Authority as Maintenance Lead Foreman on or about February 4,

1991.  Williford was hired by the Authority as the Executive

1



Director on or about October 1, 1992.  Whetstone remained in this position until his title was changed by Williford to Maintenance Superintendent on or about December 1, 1992.

Williford changed Whetstone's title in response to Whetstone's request and because Whetstone told Williford that his duties conformed more to the superintendent position than to the foreman position.  Williford asserts that no job descriptions for those positions existed at that time.  However, Whetstone has provided the court with written job descriptions for each of the positions, which appear to have been in existence since 1984. Accordingly, the court viewing the evidence in the light most favorable to the non-movant, Whetstone, will proceed as if the job descriptions did exist.  The job descriptions vary with regard to both the qualifications required and the duties.  The superintendent position is an administrative position.

In April 1993, Williford hired Management Resource Group to perform a salary comparability study and revise job titles and descriptions.  Williford asserts that the superintendent description was created at this time.  Thereafter, the Board adopted new employee grades and ten steps within each level. Each step level brings with it a five percent merit raise.

In July 1993, Whetstone wrote a letter to Bio-Tech informing it of the Authority's intention to cancel its contract with Bio-

Tech. Whetstone's job description did not specifically authorize him to write letters on behalf of the Authority. Williford objected to the fact that the letter was sent without her having the opportunity to review it first, not the fact that the letter was written.

In the summer of 1994 Chairman of the Authority's Board, C.E. Finn ("Finn") approached Whetstone and three other employees inquiring about possible wrongdoings of Williford. He requested that the employees inform him of such wrongdoing. Thereafter, in August 1994, Whetstone anonymously placed information relating to the alleged Williford's wrongdoings in Finn's box. These assorted documents included, inter alia, receipts, pictures and notes illustrating that Williford had allegedly been using Authority funds, which are public funds, for personal use. Whetstone was not authorized to communicate with the Board directly, but instead, was to follow his chain of command and communicate through Williford.

Subsequently, Williford met with her staff and informed them that whoever complained to the Chairman was on "thin ice." Her "thin ice" statement was made to the group and not directed at anyone specifically. However, Williford called Whetstone in to her office on two occasions to inquire as to why he was going to the Chairman of the Board around her back, and stating that "[i]f

3

he continues and cannot accept the way I do things, he needs to find another job." (Whetstone's Evidentiary Submission in Response to Defendants' Motion for Summary Judgment Ex 1, at Ex. D). The second time Williford spoke with Whetstone, on or about September 27, 1993, she wrote the following in his personnel file, "I called Mike into my office and ask(sic) him why he wrote a letter to the Board Chairman about me, stating items that I owed the Authority for." Id. Williford alleges that she did not know who gave Finn the documents until 1996.

On or about September 29, 1993, Williford evaluated Whetstone and determined that he was not entitled to a merit raise. Merit raises are discretionary and are determined exclusively by the Executive Director of the Authority. Every full-time employee, except Whetstone, received a merit raise in October 1993. While Whetstone's personnel file does not reflect Williford's exact reasoning for denying him a merit raise, she states that he was denied the raise because he wrote the aforementioned letter to Bio-Tech and because of poor work performance during the summer of 1993, with regard to entering a tenant's apartment without providing written notice and for refusing to replace and/or repair a tenant's broken refrigerator.

On or about December 21, 1993, Finn called a special meeting of the Board to investigate the allegations of wrongdoing against

4

Williford.   Three employees, including Whetstone, were asked to
be present at the meeting.   On or about January 6, 1994, the
Board cleared Williford of any wrongdoing.

On or about January 25, 1994, the Board changed two
employee's job titles, including Whetstone's job title from
Maintenance Superintendent back to Maintenance Working Foreman.
Ivan Smith was not present at the Board meeting and did not vote
on the change.   The title change did not result in any loss of
pay or benefits.   The most substantive change in duties was the
separation of receiving and disposing of supplies and inventory
to two different positions for internal control purposes.
Whetstone agrees that the separation of those duties is proper.
At the same time Whetstone's title was changed his office was
converted into a break room.   However, Whetstone has
subsequently, moved back into his office.

In June 1994, and then again in January 1996, Williford
issued warning notices to Whetstone for failing to complete his
weekly reports.   Williford had instructed Whetstone to complete
weekly reports detailing all completed and outstanding work
orders.

## II. Analysis

### A. Rule 56

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to a
> judgment as a matter of law.

F. R. Civ. P. 56(c). The obvious was stated by the Eleventh
Circuit as follows: "[s]ummary judgment is appropriate where
there exists no genuine issue of material fact and the movant is
entitled to judgment as a matter of law." Turnes v. AmSouth
Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Defendants
have invoked Rule 56.

### B. 42 U.S.C. § 1983

Whetstone asserts that defendants abridged his First
Amendment right of free speech and association after he submitted
information to Finn regarding Williford's alleged wrongdoing. In
order for a public employee to establish that an employer
conditioned his job in a way that impermissibly burdened a
constitutional right, he must first establish that he suffered an
"adverse employment action." See McCabe v. Sharrett, 12 F.3d
1558, 1562 (11th Cir. 1994); see also Goffer v. Marbury, 956 F.2d
1045, 1049 & n.1 (11th Cir. 1992). Because Whetstone offers no
evidence and does not argue in his brief that his freedom of

association has been abridged, Whetstone's 42 U.S.C. § 1983

freedom of association claim is due to be dismissed.

Accordingly, this court will proceed to address Whetstone's

freedom of speech claim.

Upon a showing of an adverse employment action, a four-part

test has developed to determine whether the state retaliated

against a public employee because of his speech. *See Morgan v.*

*Ford*, 6 F.3d 750, 754 (11th Cir.), *cert. denied*, 114 S. Ct. 2708

(1994). First, this court must determine "whether [Whetstone's]

speech may be fairly characterized as constituting speech of

public concern." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565

(11th Cir. 1989)(quoting *Rankin v. McPherson*, 483 U.S. 378, 384,

107 S. Ct. 2891, 2896-97 (1987)). Second, if the speech is of

public concern, the court applies the *Pickering* balancing test,

which weighs Whetstone's First Amendment interests against "the

interest of the state, as an employer, in promoting the

efficiency of the public services it performs through its

employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88

S. Ct. 1731, 1734-35 (1968). Third, if the employee prevails on

the balancing test, "the fact-finder determines whether the

employee's speech played a 'substantial part' in the government's

[adverse employment] decision." *Bryson*, 888 F.2d at 1565 (citing

*Mt Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S.

7

274, 97 S. Ct. 568 (1977)).  Finally, if the employee shows that
the speech was a substantial motivating factor in the employment
decision, "the state must prove be a preponderance of the
evidence that 'it would have reached the same decision . . . even
in the absence of the protected conduct.'"  *Id.* at 1566 (quoting
*Mt Healthy*, 429 U.S. at 286, 97 S. Ct. at 576).

1. Adverse Employment Action

     An adverse employment action is very broad and includes, but
is not limited to, demotions, refusals to hire, refusals to
promote, and reprimands.  *See Goffer*, 956 F.2d at 1049 n.1.  In
the instant action Whetstone asserts that "Williford sought to
demote him to the position of maintenance working foreman, denied
him a cost-of-living pay raise and required him to vacate his
office," and the Board approved the demotion.  (Compl. at 3).[1]

     Whetstone asserts and provides evidence that, while the
merit raises[2] doled out in October 1993 were discretionary, he
was the only full-time employee who did not get a raise.

_____

[1]Defendants refer to two warning notices that Williford issued to
Whetstone in 1994 and 1996, and argue that these are not adverse employment
actions.  It is clear that a reprimand can be an adverse employment action.
*See Goffer*, 956 F.2d at 1049 n.1.  However, because Whetstone does not allege
that these are adverse employment actions in his complaint or his brief in
response to defendants' motion for summary judgment, this court determines
that they are not adverse employment actions.

[2]Defendants offer evidence in their reply brief that the raises given in
October 1993 were merit raises and not cost-of-living raises.  Accordingly,
this court will proceed as if the raises were merit raises only.

8

Furthermore, the evidence reflects that he was denied a merit raise on September 29, 1993, by Williford, two days after Williford met with him and asked him "why he wrote a letter to the Board Chairman" about her alleged wrongdoings. (Whetstone Ex. 1, at Ex. d). This perplexes the court since she states in her affidavit that she "learned for the first time . . . in May of 1996, that in August of 1993, Whetstone placed receipts and other things which he believed reflected improper conduct by [Williford] in" the Chairman's box. (Defendants' Ex. 2, at 3). Thus, this court concludes that Williford's decision not to give Whetstone a raise is an adverse employment action.[3]

Additionally, Whetstone argues that Williford's recommendation and the Board's adoption of a new title for him is effectively a demotion, and therefore, an adverse employment decision, even though his old position apparently no longer exists. He offers the job descriptions as evidence that the two jobs, Maintenance Working Foreman, his new job, and Maintenance Superintendent, his old job, are different positions requiring different qualifications and providing varying responsibilities.[4]

---

[3]This court does not address whether the reasons proffered by defendants were the real reasons for denying Whetstone a raise. The rationale for denying the raise is a question for the fact finder.

[4]Williford states in her affidavit that job descriptions did not exist in 1992 when she originally removed Whetstone from the position of Maintenance Foreman and placed him in the position of Superintendent. However, Whetstone has filed the job descriptions which have apparently been in existence since

9

However, the new position does not change Whetstone's pay, benefits or evidently his ability to be promoted. Furthermore, Whetstone's duties have not changed significantly. In fact, Whetstone states that "his duties have not changed appreciably over the term of his employment with the Childersburg Housing Authority." (Whetstone's Brief in Opposition to Motion for Summary Judgment at 1). The fact that his previous position afforded him possibly greater responsibility does not unequivocally demonstrate an adverse employment action. *See Rogers v. Miller*, 57 F.3d 986, 988 (11th Cir. 1995)(holding that a transfer resulting in "alleged hardship or loss of supervisory responsibilities" was not an adverse employment position). However, Whetstone does not stop at listing the different responsibilities. In addition, he provides evidence that the superintendent position is a step above the Maintenance Lead Foreman position, because the Superintendent position clearly requires 10 years of experience as a supervisor or lead foreman of maintenance. Based upon the aforementioned, this court concludes that the Board's decision to change Whetstone's position was an adverse employment decision. However, the fact

---

1984. If in fact these job descriptions have been existence since 1984, the court is dumbfounded as to how the Executive Director could not have been aware of them. The court will proceed as if Williford was simply unaware that the job descriptions existed.

10

that Williford "sought" to demote Whetstone is not an adverse
employment decision.  Williford did not demote Whetstone nor does
Whetstone argue that Williford even had the authority to demote
him.  Thus, Williford's motion for summary judgment as to
Whetstone's demotion is due to be granted.

Whetstone wisely does not assert in his opposition to
defendants' motion for summary judgment that Williford's action
in removing him from his office is an adverse employment
decision.  Accordingly, because Whetstone has reacquired his
office and because Whetstone does not pursue this argument, this
court determines that the removal of his office space is not an
adverse employment decision.

2.  Four-Part Retaliation Test

Initially, the court must determine whether Whetstone's
speech is a matter of public concern.  In order to determine if
speech addresses a matter of public concern, the court must
examine the content, form, and context of the statement.[5]  *See*
*Connick v. Myers*, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 1690-91
(1983).

The content, form and context of Whetstone's speech support

---

[5]Defendants assert that the speech that Whetstone allegedly engaged in
is not clear to them.  However, it is clear to the court that the only speech
that Whetstone is complaining of herein is his anonymous communications with
Finn.

11

the conclusion that he was speaking not simply as an employee,
but as a citizen addressing a matter of public concern.
Defendants argue that Whetstone's action in giving Finn
information regarding the alleged wrongdoing of Williford,
including the misappropriation of public funds, was simply a
personal grievance. This court disagrees. "[A] core concern of
the First Amendment is the protection of the 'whistle-blowers'
attempting to expose government corruption." *Bryson*, 888 F.2d at
1566. Thus, Whetstone's speech, whistle-blowing, addressing
alleged wrongdoings of Williford with public funds is classified
as speech addressing a matter of public concern.

Next, the court turns to apply the *Pickering* balancing test.
The *Pickering* test requires balancing "the interests of the
[employee], as a citizen, in commenting upon matters of public
concern and the interest of the State, as an employer, in
promoting the efficiency of the public services it performs
through its employees." *Pickering*, 391 U.S. at 568, 88 S. Ct. at
1734-35. In applying this balancing test the Eleventh Circuit in
*Morales v. Stierheim*, 848 F.2d 1145 (11th Cir.), *cert. denied*,
489 U.S. 1013, 109 S. Ct. 1124 (1989), identified several factors
courts must consider

> in balancing the state's interest in efficient provision of
> public services against [Whetstone's] speech interest,
> including: (1) whether the speech at issue impedes the

government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made.

*Id.* at 1149.

This court's weighing of the *Pickering* balancing test, using the three *Morales* factors, demonstrates that Whetstone's speech was not so disruptive of the Childersburg Housing Authority that the Authority's efficiency outweighed Whetstone's speech interest. Whetstone's speech did not impede the ability of the Authority to fulfill its duties. In fact, there is no evidence that the Authority's operation was effected at all except in that the Director met with the employees to threaten them and a subsequent hearing was held.

Further, Whetstone's speech was proper within the parameters of the manner, time and place of the speech. While defendants argue that Whetstone should have gone through Williford to voice his complaints about her, his speech was done with the least amount of controversy and was done at the request of the Chairman of the Board. Whetstone anonymously placed information in the Chairman's box. There is no evidence that he ever went to any Board members and voiced his concerns or that he informed the Board that he submitted the information. Instead, the evidence reflects that the Board was not aware of who provided the information to Finn until if at all at the December 21, 1993,

13

hearing concerning Williford's alleged wrongdoings.  While it is
apparent that Williford unearthed that Whetstone submitted the
information, he did so at the request of Chairman and acted
anonymously so as to avoid retaliation, something he appears to
have been unable to accomplish.

Finally, the context of the speech does not indicate that it
was done with any personal animosity towards Williford.  The
Chairman asked for information and he simply provided it.  In
addition, by acting anonymously he did not attempt to acquire
personal gain by speaking up.  Accordingly, the *Pickering*
balancing test tips in favor of Whetstone.

Next, the court turns to determine whether the speech played
a substantial part in the decision to deny Whetstone a raise and
to change his job title.  Such a question is normally for the
finder of fact.  However, at the Rule 56 stage Whetstone must
offer some evidence that demonstrates there is a dispute of fact
with regard to whether the speech played any part in the
decision.  *See Beckwith v. City of Daytona Beach Shores,* 58 F.3d
1554, 1564 (11th Cir. 1995); *see also Bland v. Madison County,
Fla.,* 895 F. Supp. 1515, 1523 (N.D. Fla. 1995)(granting summary
judgment because there was no evidence that plaintiff's speech
played any part in the Commission's decision to discharge
plaintiff).

14

There are clearly disputes of fact surrounding Williford's decision not to give Whetstone the raise. Thus, the question of whether Whetstone's speech played a substantial part in denying him a raise is a question for the trier of fact.

However, with regard to the title change, there are no disputes of fact as to whether Whetstone's speech played any part in the Board's decision to change his job title. Whetstone does not offer any evidence that the Board based its decision to change Whetstone's title on his speech. While Whetstone offers evidence and argues that Williford retaliated against him because of his speech, he does not offer any evidence or assert that there is a factual question surrounding the Board's reasoning. (Whetstone's Brief in Opposition to Defendants' Motion for Summary Judgment at 16). In fact, Whetstone bases his belief that the Board retaliated against him on the time frame in which his title was changed. (Def. Ex. 1; at 197). In contrast, defendants offer evidence that the Board replaced Whetstone's title in order to have someone to perform supervisory roles and do "hands on" maintenance work. (Defendants' Ex. 3, 4, 5, 6; Smith Aff., Porter Aff., Cleckler Aff., Hook Aff.). When the Board did this it did not alter Whetstone's pay, benefits or his promotion track.

Where causation is lacking, an employee's claim of

retaliation must fail.  *See Mize v. Jefferson City Board of Educ.*, 93 F.3d 739, 741 (11th Cir. 1996).  Accordingly, this court determines there is no dispute of fact regarding causation and that Whetstone's 42 U.S.C. § 1983 claims as against the individual Board members are due to be denied.

### C. Qualified Immunity

Public officials are entitled to qualified immunity unless the constitutional right asserted was "clearly established" at the time of their conduct so that a reasonable person would have known that his or her conduct violated that right.  *See Williams v. Alabama State University*, 102 F.3d 1179 (11th Cir. 1997); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  This standard protects all public officials except those who are either plainly incompetent or who knowingly violate the law.  *See Busby v. City of Orlando*, 931 F.2d 764, 773 (11th Cir. 1991).  "[P]laintiff has the burden of showing that the defendants violated clearly established constitutional rights." *Id.*

To prevail on his claim, Whetstone must demonstrate that he suffered an "adverse employment action" because of his protected speech and that the contours of such prohibited retaliation were so clearly established at that time.  *See Rogers*, 57 F.3d at 992. Further, Whetstone "has the burden of proving that a reasonable

public official could not have believed that his or her actions were lawful in light of clearly established law." *Harris v. Board of Educ. of the City of Atlanta*, ___ F.3d ___, 1997 WL 24143 (11th Cir. 1997). With regard to the individual Board members, Whetstone only alleges that they demoted him in retaliation for his speech. While it is clear that the alleged demotion is an adverse employment decision, there is no evidence that the Board engaged in retaliation. Consequently, the individual Board members could not have believed that their actions in changing his title, which incidentally occurred simultaneously with the changing of another employee's title, violated clearly established law. The individual Board members are entitled to qualified immunity, and therefore, their motion for summary judgment on qualified immunity grounds is due to be granted.

Whetstone has also demonstrated that he suffered an adverse employment decision with regard to his being denied a pay raise. Moreover, it was clearly established at the time that a public employee's speech revealing improper conduct by fellow employees was protected. *See Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996). Therefore, Williford is not entitled to summary judgment on her claim of qualified immunity with respect to her denying the raise to Whetstone.

### D. The Authority

Municipalities are persons to whom 42 U.S.C. § 1983 applies. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978). With respect to civil rights violations, municipalities are not entitled to absolute or qualified immunity. *See id*. at 701, at 2041. Consequently, municipal agencies, such as the Authority, can be sued directly when the employee who made the alleged unconstitutional decision has final policy making authority for the municipality or when the constitutional deprivation results from governmental custom or policy. *See id*. at 690-91, at 2035-36. The Authority cannot be liable on a respondeat superior theory because it employs a tortfeasor. *See id*. However, the Authority can be liable based on a single act of a government official. *See, e.g., Owen v. City of Independence*, *Mo.*, 445 U.S. 622, 633, 100 S. Ct. 1398, 1406 (1980). The Authority can be held liable when proceeding on a single decision of a government official if "(1) the official was delegated final policymaking authority with respect to the act in question or (2) the final policymaker for the local government unit ratified the subordinate officials actions for unconstitutional reasons." *Bland v. Madison County, Fla.*, 895 F. Supp. 1515, 1520 (N.D. Fla. 1995). Only unreviewable decisions can subject the Authority to section 1983 liability. *See City of*

18

*St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924
(1988).

"The identification of [final] policymaking officials is a
question of state law" and not for the finder of fact. *Id.* at
124, at 924-25. Accordingly, the court must identify from the
state law which government officials or governmental bodies
"speak with final policymaking authority for the local
governmental actor concerning the action alleged to have caused
the particular constitutional or statutory violation at issue."
*Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S. Ct.
2702, 2723-24 (1989).

This court turns now to apply these principles to the facts
of this case. First, the Authority cannot be liable under 42
U.S.C. § 1983 unless Whetstone was deprived of his First
Amendment rights. *See Madison*, 895 F. Supp. at 1520 (citing
*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S. Ct.
1292, 1298-99 (1986)). Because it is clear from the evidence
that Whetstone's alleged demotion did not deprive Whetstone of a
constitutional right, then there is no municipal liability for
the decision of the Board to change Whetstone's title.

However, Williford's decision not to award Whetstone a
raise, did deprive Whetstone's of his constitutional rights.
Accordingly, this court must proceed to determine if this single

19

act was undertaken by an official with final policy making authority.  It is clear to the court that the final policy making authority lies with the Board.  *See* Ala. Code 24-1-24; 24-1-26 (1996).

The next question is whether the Board delegated to Williford final policymaking authority with regard to merit raises.  The Alabama Code states that the "Authority may delegate to one or more of its agents or employees such power or duties as it may deem proper."  Ala. Code 24-1-24 (1996).  It is undisputed that the Executive Director, Williford, is an employee of the Authority.  Further, defendants state that "[t]he giving of such merit raises was solely at the discretion of the Executive Director."  (Defendants' Brief in Support of Motion for Summary Judgment at 6).  However, both parties assert that their is a grievance procedure established through which employees can have the Board review decisions of the Director.[6]  Accordingly, because Williford's decision is reviewable, she does not have final policymaking authority.

Finally, the court must determine if the Board ratified Williford's acts for unconstitutional reasons.  *See Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 998 (11th Cir.

---

[6]Neither party submits to the court the personnel policy or handbook which describes the process of obtaining review.  As a result, the court is left with a void as to the circumstances surrounding a review hearing.

20

1990)(stating that ratification is only chargeable to the city if the city ratifies both the subordinates decision and reasoning); *see also Bland*, 895 F. Supp. at 1520.  For example, the court in *Bland,* addressing a similar factual situation to the instant action, determined that although it could be argued that plaintiff's boss discharged her in violation of her First Amendment rights, there was no evidence that the County Commission's affirmation of plaintiff's discharge was motivated by plaintiff's speech.  Therefore, the Bland court held that the municipality was not liable because there was no evidence that it affirmed the discharge for an improper reason. *See id*.

In the instant action there is a dispute of fact as to whether Whetstone requested that the Board review the decision of Williford to deny him a pay raise.  Accordingly, this court will proceed as if the Board did deny him a hearing and effectively determined that the denial of the pay raise was appropriate. Here, as in *Bland*, there is no evidence that the Board's decision to deny him a raise was motivated by his anonymous comments.  In fact, the evidence reflects that Whetstone had a poor work performance and that he had written unauthorized letters on behalf of the Authority.  Accordingly, because there is no evidence that Board ratified Williford's reasoning, the Authority's motion for summary judgment is due to be granted and

21

Whetstone's 42 U.S.C. § 1983 claim as against the city is due to be denied.

### III. Conclusion

Because no genuine issues of material fact exist with respect to Whetstone's 42 U.S.C. § 1983 claims as against the Authority and the individual Board members Robert Cleckler, Ivan Smith, Albert Porter, and Clark Hook, they are entitled to a judgment as a matter of law, and defendants' motion for summary judgment is due to be granted as to those defendants.  Likewise because no genuine issues of material fact exist with regard to Whetstone's First Amendment freedom of association claim and his 42 U.S.C. § 1983 retaliation claim as against Williford for demotion, Williford is entitled to a judgment as a matter of law, and her motion for summary judgment as to those claims is due to be granted.  However, because genuine issues of material fact exist with respect to Whetstone's 42 U.S.C. § 1983 retaliation claim against Williford for denying him a pay raise, Williford's Rule 56 motion as to that claim is due to be denied.  A separate and appropriate order will be so entered.

DONE this _25_ day of February, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

22